MICHAEL F. HEAFEY, Bar No. 153499
michael.heafey@troutmansanders.com
MARK C. MAO, Bar No. 236165
mark.mao@troutmansanders.com
TROUTMAN SANDERS LLP
580 California Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-5700
Facsimile: (415) 477-5710

MICHAEL D. HOBBS, JR. (*pro hac vice* forthcoming)
michael.hobbs@troutmansanders.com
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308-2216
Telephone: (404) 885-3000

Attorneys for Plaintiffs
American Automobile Association of Northern
California, Nevada & Utah; and A3 Mobility LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH, a California corporation, and A3 MOBILITY LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company, and MAVEN DRIVE LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

# COMPLAINT

Plaintiffs American Automobile Association of Northern California, Nevada & Utah ("AAA NCNU") and its affiliate A3 Mobility LLC ("Mobility" and together with AAA NCNU, "Plaintiffs") for this Complaint against General Motors LLC ("General Motors") and its affiliate Maven Drive LLC ("Maven" and together with General Motors, "Defendants"), state as follows:

## SUBSTANCE OF THE ACTION

1. This is a civil action for common law trademark infringement, federal unfair competition and false designation of origin, violation of California's unfair competition law and common law unfair competition arising out of Defendants' misappropriation and infringement of the Plaintiffs' trademark.

2. AAA NCNU is a member club within the American Automobile Association that serves members within its territory states, which includes Northern California.

3. Mobility is a wholly owned subsidiary of AAA NCNU that operates vehicle-sharing services.

4. On February 3, 2017, Mobility filed an intent-to-use trademark application for the trademark GIG ("GIG Mark") in the U.S. Patent and Trademark Office ("PTO"), Application No. 87-323570, for the following services:

| Class | Services |
| --- | --- |
| Int'l Class: 009<br><br>U.S.: 021, 023, 026, 036, 038 | Computer application software for computers, smartphones, mobile devices, wearable devices, tablets, and devices that have embedded computing functions, namely, software for collecting, editing, organizing, modifying, storing and sharing data in the field of transportation, vehicle sharing, transportation aggregation, transportation reservation, and trip planning and organizing; computer software that compares prices and ratings for travel and transportation; software for operating autonomous vehicles |
| Int'l Class: 035<br><br>U.S.: 100, 101, 102 | Business management and business administration of transportation aggregation services, and vehicle rental and vehicle-sharing services for temporary use of vehicles for |

COMPLAINT                                  1

| | |
|---|---|
| | transportation |
| Int'l Class: 039<br><br>U.S.: 100, 105 | Transport reservation services; transportation information; vehicle rental and vehicle sharing services; providing transportation reservation services online that facilitate vehicle sharing, trip planning and organizing transport for individuals; ride-hailing services; fleet rental services; vehicle operation services, namely, operating autonomous vehicles |
| Int'l Class: 042<br><br>U.S.: 100, 101 | Providing software as a service for collecting, editing, organizing, modifying, storing and sharing data in the field of transportation, vehicle sharing, transportation aggregation, transportation reservation, and trip planning and organizing; providing software as a service that compare prices and ratings for travel and transportation; providing software as a service for autonomous vehicles |

5. Plaintiffs launched their vehicle-sharing services on April 17, 2017, under the GIG Mark.

6. The PTO approved, passed and published the application to register the GIG Mark on June 20, 2017. A true and correct page from the official website of the PTO showing the current status of the intent-to-use application for the GIG Mark is attached to this Complaint as **Exhibit 1**.

7. Since at least as early as April 17, 2017, Plaintiffs have extensively and continuously used the GIG Mark to identify its vehicle-sharing services.

8. Mobility has entered into a license agreement with AAA NCNU so that AAA NCNU may use and enforce, with Mobility, the GIG Mark. Except for Mobility and AAA NCNU, no one else has a right to enforce the GIG Mark.

9. Three months after Mobility filed its intent-to use application, and subsequent to Mobility's acquisition of prior trademark rights in the GIG Mark, Defendants made a public announcement of the adoption of its vehicle-sharing services using the mark MAVEN GIG ("MAVEN GIG Mark").

10. On May 11, 2017, less than a week after Plaintiffs notified the Defendants of their significant concern regarding the Defendants' adoption of the MAVEN GIG Mark, Defendants

filed a federal trademark application (Application No. 87-446290) with the PTO for MAVEN GIG.

11. On June 21, 2017, the PTO suspended prosecution on the MAVEN GIG Mark pending registration or abandonment of three earlier filed marks. Among these three marks is Mobility's 87-323570 application. **Exhibit 2** is a true and correct copy of the PTO record showing suspension of prosecution of the MAVEN GIG Mark.

12. This Complaint asserts claims for common law trademark infringement (Count One); for federal unfair competition and false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a) (Count Two); for violation of California Business and Professions Code, § 17200, et seq. (Count Three); and for violation of common law unfair competition (Count Four). Plaintiffs bring this action to obtain injunctive relief to stop Defendants' ongoing illegal trademark use, infringement and unfair competition of AAA NCNU's GIG Mark and to seek damages sustained by Plaintiffs as a result of Defendants' unlawful actions, plus attorney's fees, costs and other relief.

## PARTIES, JURISDICTION AND VENUE

13. AAA NCNU is a California corporation with its principle place of business in Walnut Creek, California, 94597-8863.  Mobility is a California limited liability company with its principle place of business in Walnut Creek, California, 94597-8863.

14. Defendants General Motors and Maven are Delaware limited liability companies, both with a principal place of business at 300 Renaissance Center, Detroit, Michigan 48265-3000.

15. Service may be made upon Defendants' registered address, 251 Little Falls Drive, Wilmington, DE 19808, which is the registered address associated with the Defendants in the Delaware Department of State records. Delaware allows service of process to be made to the registered address of the entity that appears on Delaware Department of State records.

16. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and (b) as it involves claims presenting federal questions under 15 U.S.C. § 1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts). This Court also has supplemental jurisdiction over the California statutory claims for unfair competition

1   under 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to the claims under
2   which the Court has original jurisdiction that it forms part of the same case or controversy under
3   Article III of the United States Constitution.

4         17.    This Court has personal jurisdiction over Defendants because Defendants are
5   qualified to do business in the State of California as per the California Secretary of State website;
6   Defendants regularly conduct and solicit business within the State of California and in the
7   Northern District of California (this "District"); Defendants, directly and/or through
8   intermediaries, ship, distribute, offer for sale, sell, and/or advertise their products and services to
9   consumers and retailers in the State of California and this District; and Defendants committed
10  acts of infringement and unfair competition in the State of California and in this District.

11        18.    Confirming Defendants' pattern of regularly conducted business in the State of
12  California and in this District, Defendants are offering their vehicle-sharing services using their
13  infringing MAVEN GIG Mark in this District as confirmed in a press release on Maven's website
14  dated June 20, 2017, that the Maven Gig vehicle-sharing services were going to be offered in San
15  Francisco, California.

16        19.    Venue is proper in this District under 28 U.S.C. §1391 (b)(1), (b)(2) and (c)(2)
17  because this Court has personal jurisdiction over Defendants in this District, and a substantial part
18  of the events or acts giving rise to the claims occurred in this District in that Defendants have
19  transacted business in this District and have committed acts of trademark infringement and unfair
20  competition in this District.

**INTRA-DISTRICT VENUE**

22        20.    Pursuant to Local Rule 3-2 (c), intellectual property actions are assigned on a
23  district-wide basis.

**FACTS COMMON TO ALL COUNTS**
**The GIG Mark**

25        21.    In early 2017, Plaintiffs started using the GIG Mark in U.S. interstate commerce
26  for their GIG vehicle-sharing services.
27      //

COMPLAINT                                         4

22. Plaintiffs have made *bona fide* use and continuously and extensively used the GIG Mark in U.S. commerce and in the ordinary course of trade.

23. Mobility filed an intent-to-use trademark application for the GIG Mark in the PTO on February 3, 2017 (Application No. 87-323570). Mobility's application was approved by the PTO and published on June 20, 2017.

24. Plaintiffs have invested a substantial amount of time, money and other resources in promoting the GIG Mark in U.S. commerce.

25. Plaintiffs have continuously and extensively advertised and promoted their vehicle-sharing services under the GIG Mark in a large number of online, print, social media and other communications media in the United States.

26. The public and trade have come to rely on Plaintiffs' GIG Mark to distinguish Plaintiffs' services from those of others.

27. The GIG Mark represents a valuable asset owned by Plaintiffs.

**Defendants Unlawful Activities**

28. General Motors designs, manufactures, markets, and distributes vehicles and vehicle parts, and sells financial services throughout the United States including in the State of California and this District.

29. Maven is an affiliate of General Motors. It provides vehicle-sharing services under the MAVEN mark including in the State of California and this District.

30. Months after Mobility filed its federal intent-to-use application for their GIG Mark, on May 3, 2017, Defendants publicly announced their vehicle-sharing services under the MAVEN GIG Mark in U.S. commerce and in the ordinary course of Defendants' trade, including on Internet websites. After Plaintiffs notified the Defendants of their significant concern regarding the adoption of MAVEN GIG for vehicle-sharing services, on May 11, 2017, Defendants filed a trademark application (Application No. 87-446290) for the MAVEN GIG Mark with the PTO.

//

31. Defendants did not begin using the MAVEN GIG Mark in U.S. commerce as a service mark until after Plaintiffs first commenced continuous use in commerce of, and Mobility applied to federally register the GIG Mark for, vehicle-sharing services.

32. Plaintiffs are thus the prior users and the prior federal applicant of the GIG Mark as against the junior subsequent date of Defendants' adoption and use of the MAVEN GIG Mark in U.S. commerce as a service mark, and Plaintiffs have priority of rights to use and enforce the GIG Mark as against Defendants' use of the MAVEN GIG Mark.

33. Defendants' services, which are offered using the MAVEN GIG Mark in U.S. commerce, is used to identify vehicle leasing services to vehicle-sharing drivers, and therefore is closely related to the services used and advertised by Plaintiffs under their GIG Mark.

34. On May 3, 2017, Defendants announced the launch of Defendants' services bearing the infringing and unauthorized MAVEN GIG Mark. **Exhibit 3**

35. On June 20, 2017, Defendants announced their services using the MAVEN GIG Mark would be expanding to San Francisco, California. **Exhibit 4**

36. Defendants are using an overall confusingly similar mark to Plaintiffs' in their visual and conceptual elements. The MAVEN GIG Mark has a strong visual similarity to the GIG Mark because there is only one word that is different between the two marks and the MAVEN GIG Mark uses the GIG Mark in its entirety.

37. The parties' marks have a strong conceptual similarity because the relevant marks are for, or are closely associated with, vehicle-sharing services.

38. A number of factors confirm that there is a likelihood that the consuming public will find Defendants' use of the MAVEN GIG Mark is confusingly similar to Plaintiffs' GIG Mark, including, for example, that the parties are using almost identical marks; the services that the parties' marks represent are almost identical; and similar advertising media, including Internet websites, are used to promote the services of both Plaintiffs and Defendants.

39. Upon information and belief, Defendants intentionally, willfully and knowingly adopted the MAVEN GIG Mark, which is confusingly similar to the GIG Mark and did so with blatant disregard for Plaintiffs' trademark rights.

40. For each of the above reasons, Defendants' advertising and sale of their services in U.S. commerce and under the MAVEN GIG Mark are likely to cause confusion, or to cause mistake, or to deceive and mislead as to the source, origin, sponsorship or approval of Defendants' services and suggest that Defendants have, or their services have, an affiliation, sponsorship with or approval by Plaintiffs, which they do not have.

41. Prior to filing this Complaint, counsel for Plaintiffs sent a notice to Defendant notifying it of Plaintiffs' rights and services and significant concern regarding confusion resulting from the use of the MAVEN GIG Mark. Defendants have nevertheless persisted in their use of the MAVEN GIG Mark. Based on Defendants' disregard of Plaintiffs' notice, their refusal to acknowledge their infringement of the GIG Mark and their continued and expanding use of the infringing MAVEN GIG Mark as shown in **Exhibits 3** and **4**, Plaintiffs have been and will continue to be damaged by the Defendants' use of the MAVEN GIG Mark.

**COUNT ONE**
**Common Law Trademark Infringement**
**(Only Mobility As Plaintiff)**

42. Mobility incorporates herein and realleges Paragraphs 1-41 of this Complaint.

43. As a result of Mobility's continuous use and promotion of the GIG Mark, as well as the distinctiveness of this mark, consumers associate and recognize the mark as representing a single source or sponsor of services, and therefore the trademark is protectable at common law.

44. Mobility owns and enjoys trademark rights in the GIG Mark, which rights are superior to any rights that Defendants may claim in and to the MAVEN GIG Mark with respect to Defendants' services. Mobility's GIG Mark is strong and inherently distinctive.

45. Defendants' adoption, distribution, marketing, promotion, offering for sale, and sale of their services that use the MAVEN GIG Mark, which is confusingly similar to Mobility's GIG Mark, constitutes an infringement of Mobility's GIG Mark in violation of common law.

46. As a result of Defendants' unauthorized use of the MAVEN GIG Mark which is confusingly similar to Mobility's GIG Mark, the public is likely to believe that Defendants' services have been created, approved by, or are affiliated with Mobility's. Consequently,

Mobility's ability to gain revenue through the sale of their vehicle-sharing services is limited due to Defendants' improper use of the MAVEN GIG Mark.

47. As a result of Defendants' wrongful conduct, Mobility has suffered and will continue to suffer damages, as well as the loss of control over the goodwill and reputation established in their GIG Mark.

48. As a result of Defendants' wrongful conduct, Mobility has been damaged in an amount not presently ascertained, and such damage will continue and increase unless and until Defendants are enjoined from continuing their wrongful conduct. Unless Defendants' unlawful conduct is enjoined, Mobility has no adequate remedy at law for Defendants' wrongful conduct, because among other things, (a) Mobility's GIG Mark is unique and valuable property which has no readily determinable market value; (b) Defendants' infringement constitutes harm to Mobility such that Mobility cannot be made whole by a monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source, origin or authenticity of the infringing vehicle-sharing services; and (d) Defendants' wrongful conduct, and the resulting damage to Mobility, are continuing and ongoing, since Defendants currently sell their services under the MAVEN GIG Mark.

**COUNT TWO**
**Federal Unfair Competition**
**and False Designation of Origin**
**15 U.S.C. § 1125(a)**

49. Plaintiffs incorporate herein and reallege Paragraphs 1-41 of this Complaint.

50. Plaintiffs are the common law owners of all rights and title to, and have valid and protectable prior rights to the GIG Mark.

51. Defendants' actions described above and specifically, without limitation, Defendants' use in U.S. commerce of the confusingly similar MAVEN GIG Mark in the distribution, marketing, promotion, offering for sale and sale of their services constitute unfair competition, false designations of origin and false descriptions or representations. Such conduct wrongfully trades on Plaintiffs' goodwill in their GIG Mark and the reputation established by Plaintiffs in connection with their services, passes off Defendants' services in commerce as that

of Plaintiffs' and limits Plaintiffs' ability to interact with end user consumers and gain revenue through the sale of services using the GIG Mark.

52. As a result of Defendants' current unlawful use in commerce of the MAVEN GIG Mark, which is confusingly similar to the GIG Mark, consumers are likely to be misled, deceived and confused as to the origin, sponsorship, or affiliation of Defendants' services.

53. Defendants' unauthorized and tortious conduct also has deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of their services offered for sale and sold under their GIG Mark, placing the valuable reputation and goodwill of Plaintiffs in the hands of Defendants.

54. By engaging in the aforesaid acts, Defendants are unfairly competing with Plaintiffs.

55. Defendants' conduct in adopting and using the MAVEN GIG Mark is likely to cause confusion, mistake or deception as to the affiliation, connection and association of Defendants and their services with Plaintiffs and their services, and as to the sponsorship, origin or approval of Defendants and their services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT THREE**
**Unfair Competition**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*

56. Plaintiffs incorporate herein and reallege Paragraphs 1-41 of this Complaint.

57. By reason of the foregoing wrongful conduct, Defendants have engaged in unlawful and/or fraudulent business acts or practices, constituting unfair competition in violation of California Business and Professions Code § 17200, *et seq.*

58. By reason of the foregoing wrongful conduct, Defendants have engaged in unlawful acts relating to their unauthorized adoption and use in U.S. commerce of the confusingly similar MAVEN GIG Mark in connection with the distribution, marketing, promotion, offering for sale and sale of their services, which have caused, and which will continue to cause, a likelihood of confusion or misunderstanding as to the source and sponsorship of Defendants' services in violation of California Business and Professions Code § 17200, *et seq.*

59. By reason of the foregoing wrongful conduct, Defendants have engaged in acts relating to their unauthorized adoption and use of the confusingly similar MAVEN GIG Mark in the distribution, marketing, promotion, offering for sale and sale of their services, which have caused and which will continue to cause, a likelihood of confusion or misunderstanding as to the affiliation, connection or association with or certification by Plaintiffs in violation of California Business and Professions Code § 17200, *et seq.*

60. Defendants' conduct constitutes unfair competition in violation of California law, including California Business and Professions Code § 17200, *et seq.*

61. Defendants' actions complained of herein have caused and, unless permanently enjoined by the Court under California Business and Professions Code § 17200, *et seq.*, will continue to cause irreparable harm to Plaintiffs and to their services including those offered for sale under the GIG Mark. Plaintiffs have no adequate remedy at law because, among other things, (a) Plaintiffs' trademark is unique and valuable property which has no readily determinable market value; (b) Defendants' infringement constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by a monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, misled or deceived as to the source, origin, or authenticity of the infringing vehicle-sharing services; and (d) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing and ongoing, since Defendants currently sell their services under the MAVEN GIG Mark.

62. Upon information and belief, Defendants intentionally, willfully and knowingly adopted the MAVEN GIG Mark, which is confusingly similar to the GIG Mark and did so with blatant disregard for Plaintiffs' trademark rights.

63. Plaintiffs are entitled to recover their attorneys' fees and costs incurred in connection with Defendants' unlawful and/or fraudulent business acts or practices pursuant to California Business and Professions Code § 17200, *et seq.*

//

## COUNT FOUR
### Common Law Unfair Competition

64. Plaintiffs incorporate herein and reallege Paragraphs 1-41 of this Complaint.

65. As a result of Defendants' wrongful conduct, Defendants' services are likely to cause confusion, misrepresentation, mistake, and/or to deceive the public as to the affiliation, approval, sponsorship or connection between Defendants and Plaintiffs, and constitute unfair competition at common law.

66. As a result of Defendants' wrongful conduct in connection with Defendants' services, Plaintiffs have suffered, and will continue to suffer, irreparable injury to their rights, and have suffered, and will continue to suffer, substantial loss of goodwill and loss in value of their trademark, unless and until Defendants are enjoined from continuing their wrongful acts.

67. Defendants' actions complained of herein have caused and, unless permanently enjoined by the Court under the common law of unfair competition, will continue to cause, irreparable harm to Plaintiffs and to their services including those offered for sale under the GIG Mark. Plaintiffs have no adequate remedy at law because, among other things, (a) Plaintiffs' trademark is unique and valuable property which has no readily determinable market value; (b) Defendants' infringement constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by a monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, misled or deceived as to the source, origin or authenticity of the infringing service; and (d) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing and ongoing, since Defendants currently sell their vehicle-sharing services under the MAVEN GIG Mark.

### DEMAND FOR JURY TRIAL

68. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all claims and issues triable to a jury.

//

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. That the Court award judgment to Plaintiffs on all counts of the Complaint;

2. That Plaintiffs be granted injunctive relief under 15 U.S.C. § 1116(a) and California Business and Professions Code § 17200, *et seq.* enjoining Defendants, their officers, agents, servants, employees and attorneys and those other persons who are in active concert or participation with any of the foregoing persons, from:

   (a) developing, manufacturing, importing, using, marketing, selling or offering for sale, services under Defendant's infringing MAVEN GIG Mark, or any variant thereof which is a colorable imitation or otherwise likely to be mistaken for or confused with Plaintiffs' GIG Mark;

   (b) otherwise infringing upon Plaintiffs' GIG Mark or using any other trademarks that are confusingly similar to the GIG Mark or making any other unlawful use of the GIG Mark; and

   (c) otherwise unfairly competing with Plaintiffs or using any false designation of origin or false description or engaging in any deceptive trade practice, or trading off of Plaintiffs' reputation or goodwill, or injuring Plaintiffs' reputation or performing any act which is likely to lead members of the consuming public to believe that any services created, offered for sale or sold by Defendants are in any manner associated or connected with Plaintiffs, or is licensed, sponsored, approved, or authorized by Plaintiffs;

3. That Defendants and any subsidiaries and affiliates be required to take prompt, affirmative action within thirty (30) days of entry of order or judgment to:

   (a) withdraw from the public and destroy any advertisements or promotional materials which contain or use the infringing MAVEN GIG Mark or any confusingly similar marks, in relation to the Defendants' business in the United States; and

   (b) file affidavits with the Court confirming that these actions have been taken

pursuant to 15 U.S.C. § 1116;

4. That Plaintiffs have a judgment against Defendants for any and all profits derived by Defendants and all damages sustained by Plaintiffs, by reason of the acts hereinabove complained of and that the damages be trebled pursuant to 15 U.S.C. § 1117;

5. That Plaintiffs have a judgment against Defendants for Plaintiffs' reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and California Business and Professions Code § 17200, *et seq.*

6. That the Court grant such other relief as it deems just and equitable.

Dated:  July 7, 2017

Respectfully submitted,

TROUTMAN SANDERS LLP

By: /s/ *Michael F. Heafey*
    Michael F. Heafey
    Mark C. Mao
    Michael D. Hobbs, Jr. *(pro hac vice forthcoming)*

*Attorneys for Plaintiffs*
*AMERICAN AUTOMOBILE ASSOCIATION NORTHERN CALIFORNIA, NEVADA & UTAH and A3 MOBILITY LLC*