United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH, et al., <br><br>Plaintiffs, <br><br>v. <br><br>GENERAL MOTORS LLC, et al., <br><br>Defendants. | Case No. 5:17-cv-03874-LHK (HRL) <br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 1** <br><br>Re: Dkt. No. 51 |

In Discovery Dispute Joint Report #1 ("DDJR #1"), the parties ask the court to referee their disagreement about whether and to what extent the soon-to-be entered protective order should allow defendants' in-house counsel access to discovery information that plaintiffs designate as Highly Confidential-Attorney's Eyes Only ("AEO"). Plaintiffs argue that AEO information should be restricted to defendants' outside counsel only. Defendants suggest that in this case no information is sufficiently sensitive to warrant the AEO designation, but, if any is legitimately worthy of that designation, it should at least be accessible to the two in-house defense lawyers overseeing the litigation.

This is a trademark infringement case. The plaintiffs, the American Automobile Association of Northern California, Nevada & Utah ("AAA") and its wholly owned subsidiary, A3 Mobility ("Mobility"), allege that defendants infringe Mobility's GIG mark. The defendants,

General Motors LLC ("GM") and its controlled licensee, Maven Drive LLC ("Maven"), retort that their MAVEN GIG mark does not infringe and, in any event, it was used in commerce before the GIG mark appeared. Which mark has priority is a major issue in dispute.

The plaintiffs' GIG mark identifies their recently introduced rental car service, which invites AAA members to use a smart phone app to contact Mobility to locate and rent a nearby vehicle. The defendants' MAVEN GIG mark identifies their recently introduced rental/leasing car service where consumers use a smart phone app to select from a portfolio of GM vehicles available at a nearby service station. The court is unsure what overlap, if any, exists over the target markets of the two enterprises, but both marks suggest an association with the gig economy (an economy characterized by short term contracts and freelance piece work). It surely appears as if the parties are competitors.

Although plaintiffs assert that their proposed AEO designations are "specific and narrow," the court views them as general and broad: customer lists, vendor lists, contracts and agreements with vendors and third parties, business plans and models, and performance and financial reports. What are they leaving out?

Plaintiffs explain that they do not want to disclose to defendants' in-house counsel "highly confidential" information about their strategic and long-term plans, financial data, and details of their relationships with their customers, vendors, and other third parties. Understandable as that may be, some of that may have to be disclosed if there is a genuine need to know and appropriate protection against misuse.

This is not a case about source code, secret formulas, a groundbreaking business model, or even (probably) a Eureka moment in the car rental business, and plaintiffs' high level generalities do not fully persuade that whatever they want to keep from in-house counsel is genuinely "highly confidential." However, for lack of more specific information, the court rejects defendants' urging that plaintiffs should be ordered not to designate anything as AEO. In the first instance at least, plaintiffs may use that designation on information that they believe genuinely warrants that level of protection. Therefore, the court now proceeds to consider what AEO, if any, may defendants' in-house counsel see. That is a two-part inquiry. Is the in-house lawyer involved in competitive

2

decision making? (If yes, that would be problematic.) And, would denying AEO information to in-house counsel prejudice defendants' ability to litigate the case?

The court has reviewed the declarations of Paul Margolis ("Margolis") and Joseph Dunn ("Dunn"), who are in-house GM lawyers that defendants argue should be allowed access to AEO information in this case. Both are experienced litigators in intellectual property matters and are responsible for advising management in cases where intellectual property is involved. Each declares that in order to do their jobs, they need to understand the use of the intellectual property here at issue, the positions taken by adverse parties, and damages information, all with the aim of guiding GM's litigation strategy and settlement position. They both state they have nothing to do with Maven's decision making on pricing, sales or marketing, new product design, or selecting or negotiating with vendors. Neither participates in prosecution of trademark applications for Maven or any other GM business. The court is satisfied that Margolis and Dunn are not involved in competitive decision making.

So, how badly do defendants need Margolis and Dunn to have access to AEO information? No doubt defendants have skilled and able outside counsel representing them, but the court feels that some disclosure of AEO to in-house counsel is needed to afford defendants themselves a fair opportunity to evaluate liability and damages exposure. First off, because the court cannot see why in-house counsel would have any litigation-related reason to see customer and vendor lists, they may not see them if produced and marked AEO. As for the other, very amorphous "off-limits" categories suggested by plaintiffs (contracts with vendors, etc., business plans, and financial information) the court declines to rule based on these categories because they are too broad and general. Instead, it will rely on the Scope of Discovery section of the parties Joint Case Management Statement (Dkt. 36). The following information (documents or testimony), if marked by plaintiffs as AEO, shall be available to Margolis and Dunn:

- Relating to development, prosecution, ownership, and use of the GIG mark;
- Relating to likelihood of confusion or mistake between the GIG and MAVEN GIG marks; and
- Relating to the harm, including money damages, to the plaintiffs on account of defendants'

3

actions.

Within 10 days the parties shall submit a [Proposed] Protective Order that complies with the court's reasoning.

SO ORDERED.

Dated: February 9, 2018

---
HOWARD R. LLOYD
United States Magistrate Judge